IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROY MELVIN HOPKINS, JR., | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 1:23-2355-CDA |
| LRW TRAFFIC SYSTEMS LLC, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \*

**MEMORANDUM OPINION GRANTING
JOINT MOTION TO APPROVE FLSA SETTLEMENT AGREEMENT**

THIS MATTER is before the Court on the joint motion to approve the settlement agreement in this Fair Labor Standards Act ("FLSA") action filed by Plaintiff Roy Melvin Hopkins, Jr. against Defendants LRW Traffic Systems LLC, Robert Scott-Coples, Team CAM LLC, and Ryan Blades (collectively, "Defendants"). ECF 49. The parties also moved for the Court to retain jurisdiction over this matter for the purpose of enforcing the settlement. ECF 50. The Court will GRANT both motions.

**I.    BACKGROUND**

    ***A.*** *Factual and procedural background*

This case arises from allegations that Defendants failed to pay Plaintiff minimum wage and regular and overtime pay. *See* Amend. Compl., ECF 20, at ¶¶ 35-36, 43, 52, 63-64. Plaintiff worked for Defendants LRW Traffic Systems LLC and Robert Scott-Coples (the owner, member, and president of LRW) from April 2022 to October 2022. *Id*. at ¶¶ 4, 13. During his tenure, Plaintiff allegedly worked on projects over which

Defendant Team CAM LLC served as general contractor; Blades was the owner, member, and president of Team CAM.  *Id.* at ¶¶ 5, 7.  Plaintiff commenced this action on August 28, 2023, asserting claims under the FLSA, the Maryland Wage and Hour Law, the Maryland Wage Payment and Collection Law, and the Maryland Prevailing Wage Law.  Compl., ECF 1.

Failing to timely respond pursuant to Federal Rule of Civil Procedure 12, each Defendant received an order of default.  On January 12, 2024, the Clerk entered an order against LRW and Scott-Coples.  ECF 11.  On May 8, 2024, the Clerk entered an order against Team CAM and Blades.  ECF 26.  Months later, each Defendant moved to vacate the default orders.  ECFs 31, 42.  On September 24, 2024, the Court vacated the Clerk's order against Team CAM and Blades.  ECF 33.  Team CAM and Blades then filed their answer on October 15, 2024.  *See* ECF 34.  On December 17, 2024, the Court vacated the Clerk's order against LRW and Scott-Coples.  ECF 43.  The Court required LRW and Scott-Coples to file their answer by December 31, 2024.  *Id.* at 2.

In a joint status report dated December 31, 2024, the parties informed the Court that they "were in the process of memorizing [a] settlement agreement" and had agreed to monetary and non-monetary settlement terms.  ECF 44, at ¶ 2-4.  As a result, the parties requested that the Court stay LRW and Scott-Coples' answer deadline while they "memorialize the settlement agreement."  *Id.* at ¶ 6.  Three weeks later, the parties filed the present motions.  *See* ECFs 49-50.  In early January 2025, the parties consented to the jurisdiction of the undersigned.  ECFs 45-47.  On January 23, 2025, Judge Griggsby referred this matter to the undersigned "[f]or all proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) by consent of the parties."  ECF 51.

**B.** *The proposed settlement agreement*

The parties' Joint Motion to Approve FLSA Settlement Agreement includes a copy of the Settlement Agreement and records of Plaintiff's counsel's attorneys' fees and costs. *See* ECFs 49-2, 49-3. The settlement agreement reflects the parties' desire to resolve the lawsuit "forever, without admission of liability by [] Defendants" to avoid "the expense and inconvenience of further litigation." ECF 49-2, at 1. The agreement is the fruit of two months of negotiations. ECF 49, at 2. In exchange for Defendants' payment of $36,755.00, Plaintiff agrees to a full release of claims "whether known or unknown, whether foreseen or unforeseen, whether ripe or unripe, from the beginning of time to" January 2, 2025, the date of the agreement, whether such claims "were asserted or could have been asserted" against Defendants. ECF 49-2, at ¶¶ 2, 9. However, the release excludes:

> (i) any right to file an administrative charge or complaint with, or testify, assist, or participate in an investigation, hearing, or proceeding conducted by, the Equal Employment Opportunity Commission or other similar federal or state administrative agencies, although [] Plaintiff waives any right to monetary relief related to any filed charge or administrative complaint; (ii) claims that cannot be waived by law, such as claims for unemployment benefit rights and workers' compensation; (iii) any right to file an unfair labor practice charge under the National Labor Relations Act; and (iv) any rights to vested benefits, such as pension or retirement benefits.

*Id.* at ¶ 9. The parties agreed to allocate $11,255.00 of the settlement amount "to Plaintiff's wages and liquidated damages" and the remaining $25,500.00 to Plaintiff's counsel's attorneys' fees and costs. *Id.* at ¶ 2.

The Joint Motion includes Plaintiff's counsel's time entries, which show that thirteen individuals expended 74.8 hours at a proposed charge of $27,810.50. *See* ECF 49-3, at 1-5. After some reductions, counsel billed Plaintiff for 63.7 hours for a total

charge of $24,749.50.  *Id.* at 1.  Counsel also incurred $2,033.64 in costs such as filing and service.  *Id.*  The total bill to plaintiff is $26,783.14.  *Id.*  Based on the Settlement Agreement's earmarking of $25,500.00 for attorneys' fees and costs, the parties agree to attribute $23,466.46 to fees and $2,033.64 to costs.  ECF 49-3, at 1; *see* ECF 49-2, at ¶ 2.

## II.   LEGAL STANDARD

The FLSA "protect[s] workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees." *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 407 (D. Md. 2014).  As a result, "except in two narrow circumstances," *Beam v. Dillon's Bus Serv., Inc.*, No. DKC-14-3838, 2015 WL 4065036, at *2 (D. Md. July 1, 2015), "the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement[,]" *Hackett v. ADF Rests. Invs.*, 259 F. Supp. 3d 360, 364 (D. Md. 2016).  One narrow circumstance exists when the court "approve[s] a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to [29 U.S.C. § 216(b).]"  *Beam*, 2015 WL 4065036, at *2.  Courts will approve the settlement as long as it "reflects a reasonable compromise of disputed issues" and is not "a mere waiver of statutory rights brought about by an employer's overreaching." *Duprey*, 30 F. Supp. 3d at 407 (internal quotation marks and citations omitted).  This standard is met when the settlement "reflect[s] a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions[.]"  *Id.* at 408 (quoting *Saman v. LBDP, Inc.*, No. DKC-12-1083, 2013 WL 2949047, at *3 (D. Md. June 13, 2013) (internal quotation marks and citation omitted)).

Courts in the Fourth Circuit generally employ a three-step process in deciding whether a settlement reflects a fair and reasonable resolution of a *bona fide* dispute over

4

FLSA provisions.  First, the court must determine "whether there are FLSA issues actually in dispute[.]"  *Duprey*, 30 F. Supp. 3d at 408.  Second, the court must consider "the fairness and reasonableness of the settlement in light of the relevant factors from [Federal Rule of Civil Procedure 23.]"  *Id.*  Third, the court must contemplate "the reasonableness of the attorneys' fees, if included in the agreement."  *Id.*

## III. ANALYSIS

For the following reasons, the Court GRANTS the Joint Motion to Approve FLSA Settlement Agreement.  The Court also GRANTS Plaintiff's motion to retain jurisdiction for the purpose of enforcing the Settlement Agreement.[1]

***A.*** *There is a bona fide dispute regarding FLSA provisions.*

"In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the court examines the pleadings in the case, as well as [] the representations and recitals in the proposed settlement agreement."  *Hackett*, 259 F. Supp. 3d at 365.  A *bona fide* dispute exists "when an employee makes a claim that he or she is entitled to overtime payment."  *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009); *see, e.g., Prudencio v. Triple R. Constr. Corp.*, No. 22-1202-BAH, 2024 WL 1557205, at *3-4 (D. Md. Apr. 10, 2024) (finding a *bona fide* dispute where the parties disagreed over whether the employer failed to pay the employee overtime wages); *Mendoza v. Filo Café, LLC*, No. 23-2703-AAQ, 2024 WL

---

[1] Retention of jurisdiction is a common practice in this District in FLSA cases resolved by settlement agreement.  *See, e.g., Berman v. Mid-Atlantic Eateries, Inc.*, No. ABA-23-2840, 2024 WL 3597191, at *5 (D. Md. July 31, 2024); *Flores v. Diverse Masonry Corp.*, No. 23-3215-LKG, 2024 WL 2863575, at *7 (D. Md. June 6, 2024); *Santos v. E&R Servs., Inc.*, No. ABA-20-2737, 2024 WL 1416564, at *5 (D. Md. Apr. 2, 2024); *Smith v. David's Loft Clinical Programs, Inc.*, No. 21-3241-LKG, 2022 WL 16553228, at *8 (D. Md. Oct. 31, 2022).

964226, at *2 (D. Md. Mar. 5, 2024) (finding a *bona fide* dispute where the parties disagreed over whether the employee worked overtime hours and whether the employer failed to pay the employee overtime wages).

Like in *Prudencio* and *Mendoza*, the parties disagree as to whether Defendants paid Plaintiff overtime pay. ECF 49, at 4. Moreover, as in *Mendoza*, the parties disagree regarding whether Plaintiff worked overtime hours. *Id*. Notwithstanding the parties' agreement on this issue, the Court concludes, independently, that these disagreements represent a *bona fide* dispute.

**B.** *The settlement is fair and reasonable.*

Courts evaluate the fairness and reasonableness of a settlement by taking into account the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel[;] and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Duprey*, 30 F. Supp. 3d at 409 (internal quotation marks and citations omitted). "Parties may settle an FLSA case at an early stage provided that a plaintiff has had sufficient opportunity to evaluate the viability of [their] claims and the potential range of recovery." *Hackett*, 259 F. Supp. 3d at 366.

This standard is often met when parties exchange records and engage in extensive settlement negotiations for the purpose of avoiding the significant expense of future litigation. *See, e.g.*, *Li v. Escape Nails & Spa, LLC*, No. DKC-23-1487, 2025 WL 460752, at *2 (D. Md. Feb. 11, 2025) (finding a settlement fair and reasonable where the parties "participated in 'extensive negotiations,'" had a "sufficient opportunity to obtain

additional evidence through informal discovery," and agreed to settle for the purpose of avoiding "a lengthy and costly litigation process"); *Barnes v. Marriott Int'l, Inc.*, No. 20-3205-PX, 2021 WL 3112453, at *2 (D. Md. July 22, 2021) (finding a settlement fair and reasonable where the parties exchanged pay records and negotiated for weeks for the purpose of avoiding future litigation costs); *Villarroel v. Sri Siva Vishnu Temple*, No. GJH-I-T-2617, 2014 WL 7460967, at *2 (D. Md. Dec. 31, 2014) (finding settlement fair and reasonable where the parties exchanged pay records and held "significant negotiations" for the purpose of avoiding the "significant expenses" associated with "formal discovery, dispositive motions, and possibly trial"); *Saman*, 2013 WL 2949047, at *4-5 (finding a settlement fair and reasonable where the parties exchanged pay records and benefited from "vigorous representation and negotiations" for the purpose of avoiding costly litigation). A "sufficient exchange of relevant information" enables the parties to make knowing and informed decisions supporting a fair and reasonable settlement. *Wade v. CBH Health, LLC*, No. PX-20-3573, 2021 WL 8269082, at *3 (D. Md. Oct. 15, 2021); *see also Mendoza*, 2024 WL 964226, at *2 (assessing whether "sufficient information" allowed the parties "to make informed, intelligent decisions"); *Hackett*, 259 F. Supp. 3d at 366 ("[T]hough no formal discovery took place, . . . the informal exchange of information between [the] parties has allowed them to appropriately ascertain facts and evaluate the strength of their respective positions[.]").

Courts scrutinize releases of claims, which are hallmarks of non-FLSA settlement agreements. "[A] general release of claims beyond those specified in the [c]omplaint . . . can render the [FLSA settlement] unreasonable." *Duprey*, 30 F. Supp. 3d at 410. However, courts are "not required to evaluate the reasonableness of the settlement as it relates to non-[FLSA] claims if the employee is compensated reasonably for the release

7

executed." *Villarroel*, 2014 WL 7460967, at \*3 (citing *Duprey*, 30 F. Supp. 3d at 410). A settlement amount representing 85% of a plaintiff's estimated recovery may be "a reasonable compromise" that accounts for "the risks and costs associated with proceeding further and [the opposing party's] potentially viable defenses." *Saman*, 2013 WL 2949047, at \*5 (internal quotation marks and citation omitted); *see Corea v. SLDB, LLC*, No. 18-1120-PX, 2018 WL 4829147, at \*2 (D. Md. Oct. 4, 2018) (finding 85% of estimated recovery to be fair and reasonable); *Beam*, 2015 WL 4065036, at \*4 (63%, 59%, and 74% of recoveries were fair and reasonable); *Villaroel*, 2014 WL 7460967, at \*2 (75% of estimated recovery); *Saman*, 2013 WL 2949047, at \*5 (84.4% of estimated recovery). Also, courts look more favorably at releases that do not broadly discharge parties from any and all liability. *See Llamas Lopez v. Amerigal Constr. Co., Inc.*, No. PJM-15-520, 2015 WL 2127342, at \*3 (D. Md. May 4, 2015) (finding a release fair and reasonable where the provision did not "broadly releas[e the employer] from all liability" but instead pertained "only to wage-related claims that arose prior to the settlement agreement").

    Considering these principles and the Court's rulings in similar circumstances, the undersigned finds the settlement terms fair and reasonable. As in *Li*, *Barnes*, *Villarroel*, and *Saman*, the parties exchanged pay records and participated in negotiations for two months for the purpose of avoiding the significant expense attendant to depositions, formal written discovery, and further litigation. ECF 49, at 2-6. The parties also represent that the records have allowed Plaintiff's counsel to estimate his potential recovery. *Id*. at 5. Therefore, the Court concludes that the parties possessed sufficient information to make informed, intelligent decisions and a sufficient opportunity to evaluate the viability of the claims, potential defenses, and the potential range of

recovery. Furthermore, the settlement amount attributed to Plaintiff's wages is approximately 85% of his potential recovery—a percentage at or exceeding those approved in authority cited above.[2]

It is true that the Settlement Agreement contains a general release, which draws scrutiny. However, the settlement amount reflects reasonable compensation for the release of Plaintiff's FLSA claim. As a result, the Court need not inquire into the reasonableness of the Settlement Agreement as it relates to non-FLSA claims. *Villarroel*, 2014 WL 7460967, at *3. Even so, the Court notes that the release does not broadly absolve defendants from any and all liability; it preserves Plaintiff's ability to pursue other appropriate relief through, among others, the Equal Employment Opportunity Commission or his state workers' compensation board.

Other factors support the Court's conclusion on fairness and reasonableness. First, Plaintiff's counsel have significant experience litigating FLSA claims. *See, e.g.*, *Sutton v. Capital City Motorsports LLC*, No. 24-1665-AAQ, 2025 WL 385773, at *3 (D. Md. Feb. 4, 2025); *Menendez v. William III, Inc.*, No. 24-261-AAQ, 2024 WL 5126733, at *4 (D. Md. Dec. 17, 2024); *Hernandez v. Nelson Precast Prods., LLC*, No. 21-2814-LKG, 2023 WL 7089919, at *5 (D. Md. Oct. 26, 2023). Second, counsel for both parties represent that the settlement is in the best interests of their clients. *See Menendez*, 2024 WL 5126733, at *4 ("Counsel's opinion that the expense and potential duration of litigation weighs in favor of early settlement lends credence to a proposed settlement agreement."). Third, there is no evidence of fraud or collusion. *See Lomascolo*, 2009

---

[2] Plaintiff's counsel estimated his potential recovery at $13,129.14. ECF 49, at 2. The settlement amount of $11,255.00 represents 85.7% of that estimate.

9

WL 3094955, at *12 ("There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary.").  Finally, the settlement "does not contain provisions requiring its terms to be kept confidential nor has any request been made to seal."  *Hackett*, 259 F. Supp. 3d at 364; *see generally Escalante v. Tobar Constr., Inc.*, No. 18-0980-GLS, 2019 WL 13177822, at *4 (D. Md. Nov. 1, 2019) ("A confidentiality clause in an FLSA settlement agreement is 'not permitted without compelling reasons.'" (quoting *Salamone v. Balt. Diamond Exch., Inc.*, No. JKB-14-1507, 2014 WL 2930788, at *1 (D. Md. June 27, 2014))); *Carpenter v. Colonial Mgmt. Grp., LP*, No. JKB-12-686, 2012 WL 2992490, at *2 (D. Md. July 19, 2012) ("[A] court should not allow a[n] FLSA settlement agreement to be filed under seal except in the very limited circumstance where parties can make a substantial showing that their need to seal the agreement outweighs the strong presumption of public access that attaches to such judicial documents." (internal quotation marks and citation omitted)).

> **C.** *Based on the consent of the parties and the circumstances of the case, the attorneys' fees and costs award is reasonable.*

Prevailing parties are entitled to attorneys' fees under the FLSA.  *See* 29 U.S.C. § 216(b).  Attorneys' fees may be determined by a settlement agreement.  *See, e.g., Flores*, 2024 WL 2863575, at *5; *Prudencio*, 2024 WL 1557205, at *5; *Hernandez*, 2023 WL 7089919, at *6; *Barnes*, 2021 WL 3112453, at *3.  Importantly, a "prevailing party is entitled to attorneys' fees *in addition* to damages." *Duprey*, 30 F. Supp. 3d at 411.  In other words, attorneys' fees "should be negotiated separately from" damages, and "the wronged employee should receive his full wages plus the liquidated damages penalty

without incurring any expense for legal fees or costs." *Hackett*, 259 F. Supp. 3d at 367 (internal quotation marks and citations omitted).

A separately negotiated attorneys' fee must then be "independently assessed" for reasonableness. *Id*. To undergo this assessment, fee requests must be accompanied by "'detailed records' [] specify[ing] 'the services performed, by whom they were performed, the time expended thereon, and the hourly rate charged.'" *Matias Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 3927323, at *2 (D. Md. Aug. 20, 2019) (quoting *Bel Air Plaza Ltd. P'ship v. Ross Dress for Less, Inc.*, No. CCB-14-2533, 2016 WL 3440191, at *1 (D. Md. June 23, 2016)). Courts evaluate the reasonableness of a fee by referring to "the traditional lodestar method as a guide[.]" *Hackett*, 259 F. Supp. 3d at 367 (citing *Lyle v. Food Lion, Inc.*, 954 F.2d 9984, 988 (4th Cir. 1992)). Under this method, courts must determine the lodestar amount, defined as the "reasonable hourly rate multiplied by hours reasonably expended[.]" *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In determining the lodestar amount, courts consider twelve factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. at 321. Moreover, a fee is reasonable if "it is in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation[,]" or consistent with "the established rates that are presumptively

11

reasonable" in Appendix B to the Local Rules. *Duprey*, 30 F. Supp. 3d at 412 (internal quotation marks and citation omitted).

As an initial matter, Plaintiff's counsel provides sufficient, detailed records for the Court to assess the reasonableness of their fees. *See* ECF 49-3. Counsel provided their billing rates as follows: Omar Vincent Melehy ($675.00); Suvita Melehy ($625.00); Andrew Balashov ($450.00); Alexandre (Sasho) Todorov ($375.00); Senior Paralegals and Law Clerks ($300.00); and Paralegals and Law Clerks ($240.00). ECF 49, at 8. Mr. Todorov appears to have one year of experience and was billed at the lower, senior law clerk rate due to the pendency of his admission to this Court. *Id.* While the Joint Motion does not set forth the experience of the other attorneys, the undersigned draws on recent decisions noting the following: Mr. Omar Vincent Melehy has 37 years of experience, Ms. Suvita Melehy has 28 years of experience, and Mr. Andrew Balashov has 8 years of experience.[3] *Acker v. Craig Testing Labs. of Md.*, No. AAQ-24-1945, 2025 WL 254800, at *4 (D. Md. Jan. 21, 2025). In total, thirteen individuals representing Plaintiff spent 74.8 hours on this case, at a proposed total of $27,810.50 when using counsel's proposed rates. Counsel billed Plaintiff for 63.7 hours, for a total of $24,749.50. There were costs of $2,033.64. This totals $26,783.14 before counsel's agreement to accept $1,283.04 less in settlement than they claim to be owed (after discounting $3,061.00 before charging Plaintiff).

---

[3] This recitation of facts from an unrelated opinion should not be interpreted as approval of or justification for an attorney excluding information about experience in their fee requests. Nor should it be taken as indicative that such facts would be appropriate for judicial notice. Instead, the Court notes these facts identified in other opinions from this District for the sake of efficiency rather than deny a joint motion that will be granted based on consent regarding fees and reasonableness and fairness on other matters, as explained herein.

On the issue of the reasonableness of the attorneys' fees, the Court observes that Plaintiff's counsel frequently appear before this Court in FLSA matters and have significant experience in this area. *See, e.g.*, *Acker*, 2025 WL 254800, at *3. In their other cases, counsel have asserted hourly rates identical or close to those outlined in the Joint Motion. In each case, the Court recognized these rates as higher than the presumptively reasonable rates in Appendix B. *See Guzman v. KP Stoneymill, Inc.*, No. 20-2410-PX, 2025 WL 756645, at *3 (D. Md. Mar. 11, 2025); *Camara v. Black Diamond Rest. LLC*, No. 23-1782-AAQ, 2024 WL 4644635, at *3 (D. Md. Oct. 31, 2024); *Ramnarine v. Rainbow Child Dev. Ctr., Inc.*, No. PWG-17-2261, 2022 WL 16709764, at *5 (D. Md. Nov. 4, 2022); *Sutton*, 2025 WL 385773, at *4; *Acker*, 2025 WL 254800, at *4; *Zuniga*, 2025 WL 241000, at *5; *Menendez*, 2024 WL 5126733, at *6; *Flores*, 2024 WL 2863575, at *6; *Hernandez*, 2023 WL 7089919, at *7.

Rates higher than the presumptively reasonable rates in Appendix B would warrant scrutiny and, "absent unique circumstances[,]" a reduction in rates. *Camara*, 2024 WL 4644635, at *4 (citing *Guillen v. Armour Home Improvement, Inc.*, No. DLB-19-2317, 2024 WL 1346838, at *3 (D. Md. Mar. 29, 2024)); *see also Guzman*, 2025 WL 756645, at *4. In this case, however, the request does not warrant adjustment because of the parties' consent. A FLSA settlement agreement "warrants higher rates due to the consent of the parties." *Guzman*, 2025 WL 756645, at *4. On that basis, the Court has found Plaintiff's counsel's rates reasonable in FLSA cases where the parties agreed to attorneys' fees by a settlement agreement. *See Sutton*, 2025 WL 385773, at *4, *Acker*, 2025 WL 254800, at *4; *Zuniga*, 2025 WL 241000, at *5; *Menendez*, 2024 WL 5126733, at *6; *cf. Guzman*, 2025 WL 756645, at *4 (examining and reducing rates where defendants—who defaulted while the case was in discovery—did not respond to

13

plaintiff's fee motion); *Camara*, 2024 WL 4644635, at *4 (reducing fee rates where parties reached agreement on wages but not on attorneys' fees).  Indeed, a few months ago, the Court approved a fee award in a FLSA case involving similar sums and hours expended.  *See Sutton*, 2025 WL 385773, at *1 (approving a settlement amount of $32,500 for 64.2 hours of work where $22,500 was attributed to attorneys' fees and costs).  Like in *Sutton*, *Acker*, *Zuniga*, and *Menendez*, Defendants' consent—made with the assistance of counsel—favor a finding of reasonableness notwithstanding the "strong weight of authority" in this District regarding application of rates within Appendix B.[4] *Camara*, 2024 WL 4644635, at *4-5 (noting that an unopposed motion for fees has warranted awards exceeding Appendix B's rates).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Joint Motion to Approve FLSA Settlement Agreement and Plaintiff's Motion for the Court to Retain Jurisdiction.  A separate Order shall issue.

Date: May 9, 2025

/s/
Charles D. Austin
United States Magistrate Judge

---

[4] The Court observes that by accepting a lower settlement amount, Plaintiff's counsel reduced their lodestar amount and narrowed (while not eliminating) the discrepancy between their rates and those appearing in Appendix B and awarded by the Court in disputed fee cases.  *See Sutton*, 2025 WL 385773, at *4; *Acker*, 2025 WL 254800, at *4; *Zuniga*, 2025 WL 241000, at *5; *Menendez*, 2024 WL 5126733, at *6.